**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TERESA WEIDMAN, | : |
| **Plaintiff** | :    **CIVIL ACTION NO. 3:14-552** |
| **v.** | :      **(MANNION, D.J.)** |
| |        **(COHN, M.J.)** |
| CAROLYN W. COLVIN, | : |
| ACTING COMMISSIONER | |
| OF SOCIAL SECURITY, | : |
| **Defendant** | : |

## <u>MEMORANDUM</u>

Pending before the court is the report of Judge Cohn, the magistrate judge to whom the above matter was referred,[1] (Doc. 18), which recommends that the Court enter judgment in favor of the Commissioner of the Social Security Administration and against Plaintiff Teresa Weidman. More specifically, the report recommends that the Court affirm the Commissioner's final decision denying the plaintiff's application for benefits under the Social Security Act, as the Commissioner's decision was supported by substantial

---

[1] Plaintiff's counsel intermittently misidentifies Magistrate Judge Cohn as a "Magistrate" throughout her Objections. (Doc. 19). The title magistrate no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in **1990**. Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. No. 101-650, §321 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge."). Plaintiff's counsel is reminded to use the correct title, in the future, when referring to Judge Cohn or any other United States Magistrate Judge.

evidence. Based upon the court's review of the record, the court will **ADOPT** Judge Cohn's Report and Recommendation.

## I.    STANDARD OF REVIEW

When objections are timely filed to the report and recommendation of a magistrate judge, the district court must review *de novo* those portions of the report to which objections are made. 28 U.S.C. §636(b)(1); Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011). Although the standard is *de novo*, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper. Rieder v. Apfel, 115 F.Supp.2d 496, 499 (M.D.Pa. 2000) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

For those sections of the report and recommendation to which no objection is made, the court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b), advisory committee notes; see also Univac Dental Co. v. Dentsply Intern., Inc., 702 F.Supp.2d 465, 469 (M.D.Pa. 2010) (citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining judges should give some review to every report and recommendation)). Nevertheless, whether timely objections are made or not,

the district court may accept, not accept, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. §636(b)(1); Local Rule 72.31.

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir.2008 ). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir.1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971 ). If the ALJ's decision is supported by substantial evidence, the court is "bound by those findings." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.2001) (citation omitted). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir.1981).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

The Commissioner of Social Security must follow a five-step process to determine if an applicant is disabled under the Act. This legal framework requires the Commissioner to sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's

impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920. Since the five-step legal framework for addressing a disability claim was properly stated in the R&R, (Doc. 18, at 55–56), this portion of the R&R is incorporated by reference.

## II.   RELEVANT MEDICAL BACKGROUND

Judge Cohn's report and recommendation ("R&R") contains a thorough review of the plaintiff's medical history. (Doc. 18, at 9–54). The plaintiff did not file any objection to Judge Cohn's factual determinations regarding her medical history, so they will be adopted. *See* Butterfield v. Astrue, 2010 WL 4027768, *3 (E.D.Pa. Oct. 14, 2010) ("To obtain de novo determination of a magistrate[ ] [Judge's] findings by a district court, 28 U.S.C. §636(b)(1) requires both timely and specific objections to the report.") (quoting Goney v. Clark, 749 F.2d 5, 6 (3d Cir.1984)). The court will restrict its discussion below to the relevant medical background as it pertains to the plaintiff's objections.

## III.   DISCUSSION

On March 24, 2014, Plaintiff Teresa Weidman filed her Complaint in the instant action, (Doc. 1), seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of her claim for

Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. 42 U.S.C. §405(g); 42 U.S.C. §1383(c)(3). The Commissioner filed an answer as well as an administrative transcript of the relevant proceedings on April 30, 2014 (Doc. 7, 8). And, on August 4, 2014, the Court referred this case to Judge Cohn. Plaintiff filed a brief in support of her appeal on August 4, 2014, (Doc. 12), and on September 5, 2014, the Commissioner filed a response brief. (Doc. 13). Finally, on September 16, 2014, the plaintiff filed a reply brief. (Doc. 14).

Judge Cohn issued a comprehensive R&R on August 7, 2015 recommending that the plaintiff's appeal be denied and the action dismissed. On August 23, 2015, the plaintiff filed objections to the report recommending dismissal of her action, on three bases: that Judge Cohn erred in finding that substantial evidence supports (1) the ALJ's credibility assessment; (2) the ALJ's Step Three Findings; and (3) the ALJ's RFC Assessment. The defendant Commissioner waived its opportunity to respond to the plaintiff's objections on September 4, 2015. This court will review each of the plaintiff's objections in turn.

### A. Whether Substantial Evidence Supports the ALJ's Credibility Assessment

The plaintiff argues that the ALJ's credibility assessment, finding the plaintiff, Weidman, not credible, was not supported by substantial evidence. The plaintiff points to four specific findings by the Commissioner, and affirmed by the Magistrate Judge's R&R, regarding her credibility and the severity of her symptoms. Upon review, the court finds that the ALJ's credibility determination was proper and supported by substantial evidence.

### 1. Somatoform Disorder Is Consistent with a Finding of Adverse Credibility

The plaintiff first contends that Judge Cohn erred in affirming the ALJ's finding that the plaintiff had "a severe impairment of undifferentiated somatoform disorder and . . . that she was not entirely credible and feigned or exaggerated the severity of her symptoms." (Doc. 18, at 61-62); (Doc. 19, at 2). The plaintiff's argument is based upon the ALJ's failure to conduct the "legally correct analysis" in light of the plaintiff's diagnosis of a somatoform disorder.

The issue of credibility in this case, as Judge Cohn accurately noted in the R&R, presents an issue of first impression in the Third Circuit, namely, "whether it is error for an ALJ to make an adverse credibility finding when a claimant has been diagnosed with a somatoform disorder (a diagnosis which

requires a determination regarding malingering) and when the ALJ determines that the somatoform disorder was a severe impairment under step two." (Doc. 18, at 57-58). Judge Cohn's R&R notes the importance of credibility determinations with respect to "somatization and undifferentiated somatoform disorders where their diagnostic criteria explicitly require a finding that the reported symptoms are 'not intentionally produced or feigned (as in Factitious Disorder or Malingering).'" (Doc. 18, at 58). Ultimately, Judge Cohn determined, "[w]hile the diagnostic criteria require a finding that the symptoms were not produced by malingering, it is possible [ ] for a mixed diagnosis of both undifferentiated somatoform disorder symptoms and malingering to coexist." *Id.* at 59.[2] Thus, this court adopts in full Judge Cohn's rigorously examined and reasoned conclusion that "where a claimant has been diagnosed with undifferentiated somatoform disorder and an ALJ concludes that the disorder was a severe impairment, it is legally possible for an ALJ to

---

[2] Judge Cohn thoroughly reviews the Diagnostic and Statistical Manual of Mental Health Disorders, Fourth Edition, Text Revision (DSM-IV-TR) (2000), which states in relevant part:

> [s]ymptoms that are intentionally produced should not count toward a diagnosis of Somatization Disorder. However, the presence of some factitious or malingered symptoms, mixed with other nonintentional symptoms, is not uncommon. In such mixed cases, both Somatization Disorder and a Factitious Disorder or Malingering should be diagnosed.

DSM-IV-TR at 488-89.

make an adverse credibility finding." *Id.* at 67, 58-67; *see also Carradine v. Barnhart*, 360 F.3d 751, 756-81 (7th Cir. 2004) (J. Coffey, dissenting); *Minner v. Am. Mortgage & Guar. Co.*, 791 A.2d 826, 871-72 (Del. Super. 2000).

Credibility may be analyzed despite a diagnosis of undifferentiated somatoform disorder. Therefore, plaintiff's objection that the ALJ analyzed the plaintiff's credibility "without doing legally correct analysis" must fail.

In addition, the plaintiff, in her objections, contends that no medical opinion in the record supports a finding of malingering or factitious disorder, and that the Magistrate Judge erred in basing its entire credibility assessment on "baseless malingering and factitious disorder allegations." (Doc. 19, at 2-3).

"Allegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. §404.1529); *see also* 20 C.F.R. §404.1508. If objective medical evidence fails to substantiate the severity of the claimant's pain or symptoms, then the ALJ must make a credibility finding regarding the claimant's subjective statements. Social Security Ruling (SSR) 96-7p. An ALJ's credibility finding with respect to the severity of a claimant's symptoms requires consideration of the entire record. *Id.* More specifically, the ALJ must consider the following seven factors, in totality: 1) claimant's daily activities;

(2) the location, duration, frequency, and intensity of claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, claimant receives or has received for relief of pain or other symptoms; (6) any measures claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p; 20 C.F.R. §404.1529; Seney v. Comm'r Soc. Sec., 585 F. App'x 805, 808-09 (3d Cir. 2014) (unpublished decision).

In the instant case, the ALJ examined the record and, while she did not explicitly enumerate her findings according to the seven categories mentioned above, she addressed the entire record and concluded that the plaintiff's "allegations regarding her symptoms and limitations [are] not fully credible" (Tr. 340, 333-344). Judge Cohn, in his R&R examined the ALJ's decision and correctly found that each of the seven factors was assessed by the ALJ, and that the totality of the evidence supported the ALJ's finding that the plaintiff was not fully credible. (Doc. 18, at 69-79). More specifically, the ALJ identified "several occasions where the claimant gave poor effort, malingered and alleged excessive symptoms, which tends to question the extent to which her

allegations are believable." (Doc. 15, at 334-35). The objective record supports the ALJ's observations, and provides substantial evidence that the plaintiff may have feigned or exaggerated her symptoms, thus calling into question her credibility.[3] These instances of possible malingering in conjunction with the totality of the evidence provides ample support for the ALJ's adverse credibility finding.

### 2. The ALJ Properly Assessed Plaintiff's Syncopal Episodes

The plaintiff next contends that the ALJ's assessment of the plaintiff's syncopal episodes, which formed part of the seven factor analysis to determine credibility, was incorrect and unsupported by substantial evidence. The ALJ noted that the plaintiff "has never hurt herself" during one of her syncopal episodes. (Doc. 15, at 333). The plaintiff states that this allegation is not supported by substantial evidence; she points to one instance, documented in the record, when she suffered neck pain as a result of a syncopal episode (a fall) and was given morphine for pain relief as support that she has in fact hurt herself during an episode. (Doc. 19, at 4 (citing Doc.

---

[3] Judge Cohn's R&R identifies the specific instances in the record where six different doctors observed indicia of the plaintiff intentionally feigning or exaggerating her symptoms. (Doc. 18, at 81-86); (Doc. 15, at 812, 819, 840, 848, 971-72, 975). This court adopts and incorporates the R&R's discussion on pp. 81-86 by reference.

[15](#), at 860)).

As Judge Cohn accurately noted in his R&R, the record indicates that the during the instance cited by the plaintiff, the plaintiff only complained of *subjective* neck pain. (Doc. [15](#), at 860). This does not constitute a physical injury, and thus, the plaintiff's objection must fail. Furthermore, the entirety of the record supports the ALJ's determination that there is no evidence of objective indicia of falls (e.g. contusions or bruising) arising from syncopal episodes. *See* Doc. [18](#), at 85-86. Thus, the ALJ did not err in concluding that the syncopal episodes have never resulted in physical injury to the plaintiff and correctly noted this fact as part of its seven factor credibility analysis.

### 3. The ALJ's Inference Regarding Plaintiff's Past Drug Use Is a Harmless Error

In addition, the plaintiff argues that the ALJ drew an adverse inference concerning the plaintiff's credibility due to testimony about past crack cocaine use. (Doc. [19](#), at 4-5). The record demonstrates that plaintiff previously used crack cocaine from 2000 to 2004. The plaintiff stated that she quit "cold turkey" without aid of any substance abuse treatment programs. (Doc. [15](#), at 1067, 1071, 1074, 1234). The ALJ's decision found the plaintiff's statement that she "quit cold turkey" to be implausible, and the ALJ further stated that the testimony contributed to her finding that the plaintiff was not credible.

(Doc. 15, at 333).

As Judge Cohn noted, "evidence can be used to discount credibility if such evidence demonstrates a contradiction or inconsistency." (Doc. 18, at 89 (quoting *Gleason v. Colvin*, No. 3:14-CV-00021-GBC, 2015 WL 4232569, at *13-14 (M.D. Pa. July 13, 2015)). The record contains no contradictory or inconsistent evidence that would suggest the plaintiff did *not* quit cold turkey. Despite the absence of any contrary evidence, the ALJ found the plaintiff's testimony that she "quit cold turkey" implausible and used this determination to support a finding that the plaintiff is not credible. (Doc. 15, at 333). This court agrees with Judge Cohn's finding that the ALJ erred in drawing an improper inference about the method in which the plaintiff stopped using crack cocaine. (Doc. 18, at 90). The ALJ determined the plaintiff's credibility by looking to the totality of the circumstances, and as discussed previously, the record includes extensive evidence,[4] other than the abovementioned drug use testimony, to support the ALJ's adverse credibility finding. Therefore, like Judge Cohn, this court finds that the ALJ's improper inference solely amounts to harmless error and does not negate a finding that the plaintiff is not

---

[4] While the ALJ's analysis of the plaintiff's method of ending her drug use was improper, the record also included evidence that when the plaintiff was initially questioned about past drug use, she "reported she never used illegal drugs," but then later admitted to past crack cocaine use. (Doc. 15, at 333). This untruthfulness weighs in favor of a lack of credibility.

credible. (Doc. 18, at 91).

### 4. ALJ's Mischaracterization of the Findings of Different Doctors Is a Harmless Error

Finally, the plaintiff objects to the ALJ's mischaracterization of the findings of different doctors. The plaintiff alleges that the ALJ erroneously stated that doctors used words "such as feigning, malingerer, factitious and exaggerated" in their diagnosis of the plaintiff. (Doc. 19, at 5). Judge Cohn agreed that the plaintiff "correctly pointed out that the ALJ erroneously stated that doctors explicitly determined that Plaintiff was a malingerer." (Doc. 18, at 86-87; Doc. 19, at 5). However, Judge Cohn correctly determined that the mischaracterization resulted in a harmless error. The plaintiff objects that this mischaracterization "clouded the entire decision" and amounts to a harmful error. However, this court agrees with the standard identified in Judge Cohn's analysis:

> The Court in *Williams v. Barnhart*, upheld an ALJ decision where although "[s]ome of the discrepancies pointed out in the ALJ's opinion are not great and might not alone support an adverse credibility determination," other record evidence, supported the ALJ's finding of incredibility. *Williams v. Barnhart*, 87 F. App'x 240, 243-44 (3d Cir. 2004).

(Doc. 18, at 88). *See also Napoli v. Colvin*, No. 3:13-CV-01815, 2014 WL 2808603, at *11 at n.23 (M.D. Pa. June 20, 2014) (finding harmless error under the totality of the evidence); *Bivins ex rel. N.B. v. Astrue*, No.

[5:11-CV-51 MSH, 2011 WL 5859954, at *5 (M.D. Ga. Nov. 22, 2011)](#) ("Considering the totality of the medical evidence, the ALJ's erroneous reference to a statement . . . is harmless . . . . A remand to have the ALJ perfect the record as to this statement would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources").

In the instant action, the medical records by six different doctors contain statements relating to or identifying the possibility that the plaintiff's description of her symptoms was exaggerated or intentional. *See supra* Footnote 2. In addition, other evidence found in the record contributes to and support the ALJ's credibility finding, including the plaintiff's history of writing bad checks and initial lying about past drug use. (Doc. [15](#), at  Therefore, looking at the totality of the evidence, substantial evidence supports the adverse credibility finding despite the ALJ's mischaracterization error, which this court concludes is harmless.

### B.    *Substantial Evidence Does Not Support the ALJ's Step Three Findings*

At step three of the disability benefits evaluation process, the ALJ must determine whether a claimant's alleged impairment matches a number of listed impairments that are acknowledged as so severe as to preclude

substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; Sullivan v. Zebley, 493 U.S. 521, 529 (1990); Burnett v. Comm. of SSA, 220 F.3d 112, 119 (3d Cir. 2000). A claimant bears the burden of establishing each element of a Listing, or "all of the criteria in the listing." 20 C.F.R. §404.1525(d). If even one element is not satisfied, then the ALJ has substantial evidence to conclude that the claimant 's impairment is not equivalent and does not meet a Listing. Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Circ. 1992).

Plaintiff objects to Judge Cohn's determination that the ALJ was correct in finding that the plaintiff does not meet the requirements of Listing 12.07B. (Doc. 19, at 6-9). Listing 12.07B requires that the claimant demonstrate that his medical symptoms (from the 12.07A finding) result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, app. 1, §12.07. The ALJ found that the plaintiff did not suffered from marked restriction of activities of daily life; did not suffer marked difficulties in maintaining social functioning or concentration, persistence, or pace; and did not undergo repeated episodes of

16

decompensation of extended duration. (Doc. 15, at 329-31). The plaintiff objects to the ALJ's determination as to 12.07B(2)-(4), and also to Judge Cohn's "summarized and unfounded reasoning" that affirms the determination. (Doc. 19, at 6). This court agrees that the ALJ's determination was supported by substantial evidence, but for slightly different reasons, which will be discussed below.

First, plaintiff states that she has marked impairment in maintaining social functioning, and presents several facts from the consultative examination performed by Dr. Laguna to support the assertion. These facts indicate that the plaintiff sometimes feels frustrated by her family and others, and suffers from "emotional numbing and dissociative disorders." (Doc. 19, at 7; Doc. 15, at 957-59). However, the ALJ looked at the entire record, not simply the examination of Dr. Laguna. The ALJ noted the plaintiff's testimony at the hearing, where the plaintiff stated she talks on the phone with others, she lives with her husband and children, and a friend takes her to appointments. (Doc. 15, at 330). The plaintiff's behavior clearly demonstrates an ability to get along with others and interact effectively.[5] In addition, Dr.

---

[5] "Social functioning refers to your *capacity to interact independently, appropriately, effectively, and on a sustained basis* with other individuals. Social functioning includes *the ability to get along with others*, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. . . . We do not define "marked" by a specific number of different behaviors in which

Fretz' report, which reviewed the plaintiff's medical record and history, stated that the plaintiff suffered solely from *moderate impairment* in maintaining social functioning, (Doc. 15, at 438), and as will be discussed below, the ALJ properly placed great weight on Dr. Fretz' opinion. (Doc. 15, at 343). The ALJ's determination, which relied on objective record evidence, medical opinions, and hearing testimony, clearly amounts to substantial evidence and must be upheld.

Next, the plaintiff objects on the basis that the plaintiff suffers from a marked impairment in maintaining concentration, persistence, or pace, and that the ALJ incorrectly found otherwise. (Doc. 19, at 7). This 12.07B criterion refers to the ability of the claimant to "sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks." 20 C.F.R. pt. 404, subpt. P, app. 1. "Marked" impairment here refers to the "nature and overall degree of interference" with work functioning, and is generally assessed through mental status examinations (e.g. serial sevens or threes) or simulated work tasks that require short term memory and completion of the task. *Id.* The plaintiff claims that she has marked difficulties, and supports her assertion by identifying Dr. Laguna's assessment that she

---

social functioning is impaired, but by the nature and overall degree of interference with function." 20 C.F.R. pt. 404, subpt. P, app. 1 (emphasis added).

had "a poor capacity for calculating serial threes," and that treatment records that assign low GAF scores. (Doc. 19, at 7).

The ALJ, on the other hand, focused on objective evidence from the record showing that the plaintiff's condition improves with treatment and that she left her last job due to a physical hand problem, not a problem sustaining the job mentally. (Doc. 15, at 330). Later in the ALJ's opinion, she places only partial weight on Dr. Laguna's reports, but great weight on Dr. Fretz' report which concludes that the plaintiff has only "mild" difficulties with concentration, persistence, or pace. (Doc. 15, at 343, 438). The ALJ also addresses the low GAF scores by noting the range of scores the plaintiff received through years of treatment (25 to 55). The ALJ further explains that GAF scores are subjective and attach only to a particular moment in time, but fail to take into account "a longitudinal view of the claimant's functioning." (Doc. 15, at 342). Thus, because the plaintiff's functioning and GAF scores improved with treatment, the lower scores do not reflect the plaintiff's functional ability today.

While the ALJ did give some weight to the plaintiff's poor capacity calculating threes and following instructions, the remainder of the objective evidence, particularly the medical treatment reports and Dr. Fretz's report, supports the conclusion that the plaintiff has greater than mild, but less than marked impairment. Thus, the ALJ's determination that the plaintiff has

moderate restrictions in this area of functioning is supported by substantial evidence and will be upheld.

Finally, the plaintiff contends that she has experienced multiple episodes of decompensation, each of which was of extended duration, which satisfy the fourth criterion under 12.07B. (Doc. 19, at 6-8). The plaintiff states that Judge Cohn incorrectly found that substantial evidence supported the ALJ's determination that this criterion was not satisfied. (Doc. 19, at 9). Episodes of decompensation are defined by 20 C.F.R. Part 404, Subpart P, Appendix I as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. pt. 404, subpt. P, app. 1. These episodes must be repeated and of extended duration, which means there must be three episodes in one year (or an average of once every four months), and each must last for "at least 2 weeks." *Id.*

Judge Cohn's analysis in the R&R arrived at the correct conclusion, namely that substantial evidence supported the ALJ's determination that the plaintiff did not experience multiple episodes of decompensation of extended duration, but we will affirm for a different reason. Judge Cohn stated that the ALJ's finding that the plaintiff is not credible effectively prevents the plaintiff's

emergency room visits from counting as episodes of decompensation because her symptoms during those visits were likely feigned. (Doc. 18, at 92). However, this issue can be decided without consideration of the plaintiff's credibility. Credible or not, the alleged episodes of decompensation are *not of extended duration*. Extended duration, as stated previously, requires that each episode last for at least two weeks. All alleged episodes, except for the plaintiff's attendance at Philhaven Acute Partial Program from July 15, 2011 to August 12, 2011, do not meet the two week requirement. (Doc. 19, at 8). The ALJ accurately noted these facts and properly concluded that "[w]hile there is evidence of multiple exacerbations in symptoms or signs associated with the claimant's mental impairments, the lack of extended duration and evidence of improvement with treatment . . .do[ ] not meet the requisite adaptive functioning deficits to meet this listing." (Doc. 15, at 331). Therefore, substantial evidence supports the ALJ's finding that this criterion is not met.

And, furthermore, because the plaintiff cannot satisfy *any* of the four 12.07B criteria, substantial evidence supports the ALJ's finding that the plaintiff does not meet the criteria required for a 12.07 Listing.


### C. Whether Substantial Evidence Supports the ALJ's Residual Functional Capacity (RFC) Assessment

The plaintiff lastly objects on the grounds that the residual functional

capacity (RFC) assessment was not supported by substantial evidence because the ALJ incorrectly weighed medical opinion testimony and thus failed to include limitations related to the plaintiff's somatoform disorder in her RFC assessment. Specifically, the plaintiff points to the ALJ's reliance upon Dr. Fretz, a non-treating, non-examining medical source and the ALJ's failure to give any weight to Ms. Yevtukh, a non-acceptable medical source.

An RFC assessment, or residual functional capacity assessment, is required after Step 3 but before moving on to Step 4 of the Commissioner's sequential evaluation process. 20 C.F.R. §§404.1520(e), 416.920(e). Residual functional capacity is defined as the most a claimant can do in a work setting despite the physical and mental limitations resulting from all of her impairments. *Id.* at §404.1545(a)(1). The Commissioner must use all relevant evidence in the record to make the RFC assessment. *Id.*

In reviewing the record to make the RFC assessment, the ALJ must take into account all the medical opinion evidence along with all other relevant evidence in the record, 20 C.F.R. §404.1527(b), and must allocate weight to each medical opinion upon which it relies. In the R&R, Judge Cohn accurately described what qualifies as medical opinion evidence and the process by which it is then analyzed and weighed:

> "Medical opinions are statements from . . . **acceptable medical sources** that reflect judgments about the nature and severity of

[a claimant's] impairment(s), including . . .symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimants] physical or mental restrictions." 20 C.F.R. §§404.1527(a)(2), 416.927(a)(2) (emphasis added). Only licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources." *See* 20 C.F.R. §§404.1513(a) & 416.913(a). Evidence from "other sources" that are not "acceptable medical sources" . . . are ***not entitled controlling weight***. *See* 20 C.F.R. §§404.1513(a) and (d)(1), 404.1527(a)(2), 416.913(a) and (d)(1), 416.927(a)(2); Social Security Ruling (SSR) 96-2p (rule for according controlling weight to "treating source medical opinions"); SSR 06-03p; Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999); *cf.* Gomez v. Chater,74 F.3d 967, 970-71 (9th Cir. 1996) (Opinions from "other sources" can be accorded "less weight than opinions from acceptable medical sources").

(Doc. 18, p. 94) (emphasis added).

Any medical opinion from an acceptable medical source, unless it is designated a controlling treating medical opinion, must be analyzed according to factors set forth in the Code of Federal Regulations. 20 C.F.R. §404.1527(c). These factors include: the examining and treating relationship; the length and frequency of the relationship; the extent and nature of the relationship; the amount of objective medical evidence supporting the opinion; consistency with the entire record; specialization of the medical professional; and other factors that tend to support or contradict an opinion. *Id.*

### 1. The ALJ Did Not Err in Giving "Great Weight" to Dr. Fretz' Opinion

The plaintiff specifically objects to the R&R because it affirms the ALJ's allocation of "great weight" to the opinion of Dr. Fretz, a non-treating, non-examining medical source. The plaintiff argues that a non-treating, non-examining acceptable medical opinion can only be given "little, if any, weight." (Doc. 19, p. 9). However, a non-treating, non-examining medical opinion must be analyzed according to the factors set forth above to determine its weight, and may ultimately be entitled to more than "little, if any, weight." In fact, a non-treating, non-examining medical opinion may be allocated greater weight than other acceptable and non-acceptable medical sources, provided the ALJ gives adequate explanation for its determination. SSR 96-6p; 20 C.F.R. §404.1527(c); Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000); Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999).

In the instant action, the ALJ clearly explained why it afforded Dr. Fretz' opinion great weight:

> Dr. Fretz, opined the [plaintiff] can understand, remember and carry out simple tasks. (Exhibit 2A). This is consistent with the medical records from Dr. Laguna, Philhaven Hospital, Hershey Medical Center and Good Samaritan Hospital, which all reveal the [plaintiff] having depression and anxiety, and related symptoms, that would reasonably limit the [plaintiff]'s ability to carry out more detailed tasks and instructions. (*See generally* Exhibits 2F; 3F; 4F; 6F; 8F-12F; 13F; 16F; 17F). Moreover, Dr. Fretz's opinion is

based on his specialty in mental health and his familiarity with the Social Security Administration disability program. His opinion reasonably comports with the evidence contained in the record at the time of the assessment, and evidence received at the hearing level did not demonstrated a worsening or deterioration in [Plaintiff]'s condition requiring more restrictive limitations.

(Doc. 15, p. 343). This explanation includes consideration of numerous factors, as required by section 404.1527(c) of the regulations, namely the specialty and knowledge of Dr. Fretz, objective medical evidentiary support, consistency with other evidence at the hearing, and other factors. Thus, the ALJ's decision to place great weight on Dr. Fretz' opinion is proper, and the plaintiff's objection must be denied.

### 2. The ALJ Did Not Err in Giving "No Weight" to Ms. Yevtukh's Opinion

The plaintiff also raises an objection regarding the ALJ's decision to give "no weight" to treating Nurse Practitioner, Ms. Yevtukh's opinion. Ms. Yevtukh is a Nurse Practitioner who treated the patient every 6 months for two years, from 2010 to 2012. (Doc. 15, p. 1245). As stated above, "[o]nly licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered 'acceptable medical sources.'" (Doc. 18, p. 94). A nurse practitioner is not an acceptable medical source

under the regulations; therefore, a nurse practitioner's opinion cannot be given controlling weight. However, an ALJ may consider a non-acceptable medical opinion to assess severity of impairments and functional effect, and may reject or accept the opinion after explaining the reasons for doing so. (Doc. 18, p. 95); SSR 06-03p; Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000) (explaining that an ALJ must consider all non-medical evidence and explain why it rejects or accepts such testimony).

The plaintiff, in her objections, admits that Ms. Yevtukh is not an acceptable medical source, but states that the ALJ failed by not giving her opinion *any weight* in the RFC assessment. (Doc. 19, p. 11). The plaintiff states, more specifically, that the ALJ incorrectly found Ms. Yevtukh's opinion to be inconsistent with objective evidence in the record, thus requiring that it be given "no weight." To support her objection, the plaintiff points to consistencies between the RFC questionnaire completed by Ms. Yevtukh and Ms. Yevtukh's own previous treatment notes. However, the plaintiff fails to address the contradictory and inconsistent evidence found throughout the voluminous record for this case.

The ALJ found inconsistencies between Ms. Yevtukh's RFC questionnaire and both her own findings regarding the plaintiff as well as objective evidence in the record. Judge Cohn thoroughly reviewed the medical

evidence presented in this case and identified numerous pieces of evidence that are inconsistent with or contradict Ms. Yevtukh's opinion. *See* Doc. 18, p. 97-98. Furthermore, Ms. Yevtukh herself states that she is not a neurologist and she does not treat the plaintiff's depression; these statements further weaken her conclusions with regard to the plaintiff's physical limitations. (Doc. 15, p. 342, 1245). Therefore, Judge Cohn properly found that the ALJ adequately explained her allocation of weight to Ms. Yevtukh's opinion, and that the record supported such determination.[6] This objection will, thus, be denied.

## IV.   CONCLUSION

For the foregoing reasons, the ALJ's decision to deny the plaintiff's Social Security claim is supported by substantial evidence. Accordingly, the R&R issued by Judge Cohn, (Doc. 18), is **ADOPTED**. The final decision of the

---

[6] The plaintiff also objected that the ALJ's failure to give weight to Ms. Yevtukh's opinion resulted in an improper RFC assessment that did not take into account all of the plaintiff's physical problems and syncope episodes. Because this court finds the ALJ's decision to accord no weight to Ms. Yevtukh's non-acceptable medical opinion proper, then this objection has no foundation and is thus denied as well. (Doc. 19, p. 12).

Commissioner is **AFFIRMED**, and the plaintiff's appeal, (Doc. 1), is **DENIED**.

An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: September 30, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-552-01.wpd